**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEWART SMITH; FRED HEIDARPOUR,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**VISION SOLAR, LLC, and DOES 1 through 10, inclusive, and each of them,**<br><br>Defendants. | Case No. **2:20-cv-02185-MMB** |

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINITFFS' SECOND AMENDED COMPLAINT**

---

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Cynthia Z. Levin
1150 First Ave., Ste. 501
King of Prussia, PA 19406
Phone: 866-598-5042
Fax: 866-633-0228
clevin@toddflaw.com
*Attorneys for Plaintiffs Stewart Smith, Fred Heidarpour, and the putative Class*

<u>T</u><small>ABLE OF</small> <u>C</u><small>ONTENTS</small>

I. Introduction ...............................................................................................1

II. Factual Background ..................................................................................1

III. Legal Argument .......................................................................................4

  A. Plaintiffs' Classes Are Not Fail-Safe ................................................5

  B. Defendant's Argument Regarding Ascertainability And Individual Fact-Finding Is Inappropriate At This Stage ..................................................7

  C. Plaintiffs Have Adequately Alleged Agency .....................................9

  D. Smith Has Adequately Pled A Section (b) Violation Of The TCPA............................13

IV. Conclusion ............................................................................................16

<u>TABLE OF AUTHORITIES</u>

**Cases**

*A & L Indus., Inc. v. P. Cipollini, Inc.*, 2013 WL 5503303 (D.N.J. Oct. 2, 2013) ...................... 7

*Abella v. Student Aid Ctr., Inc.*, No. CV 15-3067, 2015 WL 6599747 (E.D. Pa. Oct. 30, 2015) 6, 8

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ......................................................... 16

*Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190 (D.N.J. 2013)................................... 8

*Byrd v. Aaron's Inc.,* 784 F.3d 154 (3d Cir. 2015) ................................................... 5

*Campbell-Ewald Co. v. Gomez*, —— U.S. ——, 136 S.Ct. 663, 674 (2016) ................................ 9

*Carrera v. Major Energy Servs., LLC*, No. 15-3208 (MAS) (LHG), 2016 WL 7183045 (D.N.J. Mar. 29, 2016)...................................................................................... 15

*Connelly v. Hilton Grand Vacations Co.*, No. 12-cv-599 (KSC), 2012 WL 2129364 (S.D. Cal. June 11, 2012)............................................................................................ 15

*Cunningham v. Capital Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405 (D.N.J. Nov. 20, 2018)..................................................................................... 10

*Cunningham v. Rapid Response Monitoring Servs.,* 251 F.Supp.3d 1187 (M.D. Tenn. 2017).. 10

*Dobkin v. Enter. Fin. Group*, No. 14-1989, 2014 WL 4354070 (D.N.J. Sept. 3, 2014)............. 10

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) ................................. 4, 13

*Donaca v. Metropolitan Life Insurance Company*, No. 13-5611, R2014 WL 12597152 (C.D. Cal. 2014)..................................................................................... 4, 8

*Facebook, Inc. v. Duguid*, No. 19-0511, 2020 WL 3865252 (U.S. July 9, 2020) ................. 4, 13

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) ................................... 16

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013)................................... 5, 8

*Hazan v. Wells Fargo Home Mortg.*, No. CV1810228MASTJB, 2020 WL 919183 (D.N.J. Feb. 26, 2020) ................................................................................... 15

Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068 (9th Cir. 2019) ........................ 13

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380 (3d Cir. 2015).............. 8

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F.Supp.2d 1253 (S.D. Cal. 2012).................. 14

*Jannarone v. Sunpower Corp.*, No. CV189612MASTJB, 2018 WL 5849468 (D.N.J. Nov. 7, 2018) ....................................................................................................................... 11

*Jannarone v. Sunpower Corp.*, No. CV189612MASTJB, 2019 WL 4058981 (D.N.J. Aug. 28, 2019), *reconsideration denied*, No. CV189612MASTJB, 2020 WL 2085635 (D.N.J. Apr. 30, 2020). ...................................................................................................................... 11

*Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593 (S.D. Fla. Nov. 9, 2015) ........................................................................................................................ 14

*Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563 (W.D. Pa. 2017) ..................................... 10

*Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) ..... 9

*Korman v. The Walking Co.*, 503 F. Supp. 2d 755 (E.D. Pa. 2007) ......................................... 4, 8

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72 (3d Cir. 2011) ..................... 4, 8

*Lap Distributors, Inc. v. Glob. Contact - Int'l Publ'g Corp.*, No. CV 19-6317 (RMB/KMW), 2020 WL 1616505 (D.N.J. Apr. 1, 2020) ................................................................... 7

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................... 8

*Martinez v. TD Bank USA*, No. 15-7712, 2017 WL 2829601 (D.N.J. 2017) ............................ 13

*McCabe v. Caribbean Cruise Line, Inc.*, No. 13-6131, 2014 WL 3014874 (E.D. Pa. July 3, 2014) ........................................................................................................................ 10

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ................................ 8

*Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D. W. V.A 2013) ................................. 12

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. Cal. 2012) .......................... 7

*Norman v. Sito Mobile Sols.*, No. 17-2215, 2017 WL 1330199 (D.N.J. Apr. 6, 2017) ............. 14

*O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, No. CV 16-3563, 2017 WL 634069 (E.D. Pa. Feb. 16, 2017) ................................................................................................ 6

*Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 WL 7380708 (E.D. Pa. Dec. 19, 2016) ......................................................................................................................... 15

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014)7

*Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 WL 3732097 (S.D. Fla. Dec. 14, 2017) ............................................................................................................................ 14

*Sieleman v. Freedom Mortg. Corp.*, No. 17-13110, 2018 WL 3656159 (D.N.J. Aug. 2. 2018) 15

*Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 WL 232425 (N.D. Ill. Jan. 20, 2016) ........................................................................................................................ 14

*Soular v. N. Tier Energy LP*, No. 15-cv-556, 2015 WL 5024786 (D. Minn. Aug. 25, 2015) ...... 6

*Todd v. Citibank*, No. 16-5204-BRM-DEA, 2017 WL 1502796 (D.N.J. Apr. 26, 2017) .......... 15

*Wilson v. Quest Diagnostics, Inc.*, No. 18-11960. 2018 WL 6600096 (D.N.J. Dec. 17, 2018) . 15

*Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610 (E.D. Pa. 2015) .... 7, 8

*Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484 (D.N.J. Nov. 29, 2018) ..................................................................................................................... 14

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ........................................... passim

**Other Authorities**

RESTATEMENT 3D OF AGENCY, ............................................................................................ 11, 12

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... 1

Fed. R. Civ. P. 8 ..................................................................................................................... 1

**Regulations**

In the Matter of The Joint Petition Filed by Dish Network, LLC, et al., CG Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574 (2013) ..................................................................... 9, 11, 12

**Memorandum of Points and Authorities**

## I.     Introduction

Plaintiffs Stewart Smith ("Smith") and Fred Heidarpour ("Heidarpour," and with Smith, "Plaintiffs") bring this action on behalf of themselves and two Classes of similarly situated individuals against Defendant Vision Solar, LLC ("Defendant") arising out of Defendant's telemarketing practices alleged to be in violation of both the autodialer and prerecorded provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et. seq. ("TCPA").  After Defendant's original Motion to Dismiss and the Court's Order which granted Plaintiffs leave to amend, Plaintiffs have amended to narrow the relevant Classes so as to make them not fail-safe and bolstered the allegations regarding agency and the device at issue.  Defendant's motion is largely premised on prematurely arguing Class Certification issues and Defendant's misconstruing the fail-safe issue and failing to read Plaintiffs' Second Amended Complaint—and then blaming its failure on Plaintiffs.  As a result, Defendant's arguments ring hollow against the actual issue before the Court.

Plaintiffs' short and plain statement of claims under the autodialer and prerecorded voice provisions of the TCPA are adequate to satisfy both Fed. R. Civ. P. 8 and overcome Defendant's Fed. R. Civ. P. 12 motion.[1]  Defendant's remaining attack on Class Certification issues before discovery has even commenced are premature and inappropriate.

## II.     Factual Background

As the Court has already reviewed this matter once, Plaintiffs focus their recitation on what has changed and is relevant for the analysis in this Motion.

---

[1] If the Court views that more factual allegations need to be stated, Plaintiffs request leave to amend pursuant to Fed. R. Civ. P. 15, which "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

On or about September 26, 2019, Plaintiff Smith received a call on his cellular telephone from an agent of Defendant seeking to solicit to home solar products.   Second Amended Complaint, Dkt. 13 ("SAC") at ¶ 9.  The call had a noticeable pause and delay before the agent came on the line and was of an impersonal nature as Plaintiff had no prior relationship to Defendant or its agents, which is indicative of the use of an "automatic telephone dialing system" or ATDS.  *Id.* at ¶ 11.  After the call, Plaintiff Smith began receiving calls from Defendant directly seeking to solicit its solar products and setup an appointment and identified itself by name on these calls, such that the call made on or about September 26, 2019 had clearly been made for the benefit of Defendant.  *Id.* at ¶ 10.

Thereafter, on or about January 25, 2020, Plaintiff Smith received another call on his cellular telephone from a company seeking to solicit home solar that identified itself as being "Exchange Energy" who told Plaintiff Smith that he would receive further calls from Defendant.  *Id.* at ¶ 14.  Accordingly, Exchange Energy was acting as an agent of Defendant and Defendant benefited from such call.  *Id.*  As with the September call, the January call had a noticeable pause and delay before the agent came on the line and was of an impersonal nature as Plaintiff had no prior relationship to Defendant or its agents, which is indicative of the use of an "automatic telephone dialing system" or ATDS.  *Id.* at ¶¶ 15-16.

Defendant had actual knowledge or, at a minimum, should have known about the calls of its agents and therefore ratified the act of the calls placed to Plaintiff Smith.  *Id.* at ¶ 17.  Further, the immediate follow-up by Defendant to the calls in September 2019 and use of Defendant's name by its agent on January 15, 2020 indicated that the calls were being made for the benefit of Defendant.  *Id.* at ¶ 18.  Accordingly, Defendant is either directly liable or vicariously liable through a principle-agent relationship as well as apparent authority and ratification.  *Id.* at ¶ 19.

On or about January 24, 2020, Plaintiff Heidarpour received a call on his home residential landline that used a prerecorded voice to "prequalify" or collect information from him. *Id.* at ¶ 22. After multiple minutes of this prerecorded or artificial voice response system, Plaintiff was transferred to an agent of Defendant that identified itself as being "Exchange Energy," and indicated that Defendant would arrive for an appointment to further sell Plaintiff Heidarpour solar on January 25, 2020. *Id.* at 22. Accordingly, this call was clearly made for the benefit of Defendant who then began direct calling Plaintiff Heidarpour to sell its services. *Id.* at ¶¶ 22-23. As with Plaintiff Smith, Defendant had actual knowledge or should have had knowledge of the conduct of its agents in placing prerecorded calls to Plaintiff Heidarpour. *Id.* at ¶ 26. Further, the use of Defendant's name on the call and immediate response by Defendant following the call led Plaintiff Heidarpour to believe the calls were placed by an agent of Defendant. *Id.* at ¶ 27. Accordingly, Defendant is either directly liable or vicariously liable through a principle-agent relationship as well as apparent authority and ratification. *Id.* at ¶ 28.

Plaintiffs seek to represent two classes against Defendant arising from its violation of the TCPA, defined as an ATDS Class consisting of:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's cellular telephone for whom Defendant has no record of prior express consent for such calls within the four years prior to the filing of this Complaint

And a Prerecord Class consisting of:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's telephone made through the use of any artificial or prerecorded voice within the four years prior to the filing of this Complaint.

*Id.* at ¶¶ 31-32.

III.   **Legal Argument**

Defendant seeks to deprive Plaintiffs of any discovery by prematurely moving to strike

Plaintiffs' class definitions on three grounds, two of which explicitly require such discovery to

prove.  Premature motions to strike are disfavored.  *Landsman & Funk PC v. Skinder-Strauss*

*Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011) (recognizing that a Court must conduct a "rigorous

analysis" to determine whether class certification is appropriate and finding that a district court's

decision was premature when it was made without discovery and on a motion to dismiss);

*Korman v. The Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (finding that "[i]t would

be improper to allow [a defendant] to slip through the backdoor" and move to strike class

allegations pursuant to Rule 23(d)(4) when, inter alia, "discovery on the issue is still ongoing.");

*Donaca v. Metropolitan Life Insurance Company*, No. 13-5611, R2014 WL 12597152 (C.D. Cal.

2014) (collecting cases).  Plaintiffs have not defined a "fail-safe" class and Defendant's

remaining arguments are wholly premature and inappropriate for resolution at this stage.

Defendant additionally argues that Plaintiffs have failed to state claims, but the additional

factual allegations put forth by Plaintiffs in their Second Amended Complaint meet the burden of

creating plausibility about the usage of an ATDS[2] and clear existence of an agency relationship

between Defendant and the company it hired to place burdensome robocalls to consumers on its

behalf.  Accordingly, Defendant's Motion should be denied in full.

---

[2] The Supreme Court is currently reviewing the definition of an ATDS under the TCPA in
*Facebook, Inc. v. Duguid*, No. 19-0511, 2020 WL 3865252 (U.S. July 9, 2020), which is
scheduled for oral argument in December 2020.  The Supreme Court is specifically reviewing
the split between *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3d Cir. 2018) and other Circuits and
thus the Court's ruling will implicate the arguments made by Defendant such that a stay is likely
appropriate.

## A. __Plaintiffs' Classes Are Not Fail-Safe__

Defendant argues again that both of Plaintiffs' Classes are fail-safe because they are premised on a requirement of finding liability in order to become a Class member—and that those who are not found to have liability "drop out." This is untrue and Defendant is aware it is untrue—as it subsequently argues that Plaintiffs' Classes do not only target those with liability and thus are unascertainable.[3] Class definitions must be "defined with reference to objective criteria" and there must be "a reliable and administratively feasible mechanism for determining" which individuals fall into the class. *Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). A "fail-safe" Class is one where the definition explicitly is based on liability—such that membership is based solely on a finding of liability, and in the absence of liability a potential class member simply "drops out."

The ATDS Class is defined as:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's cellular telephone for whom Defendant has no record of prior express consent for such calls within the four years prior to the filing of this Complaint

SAC at ¶ 31. Such Class is not failsafe because the definition is not premised on liability under the TCPA, as liability also requires that the call have been made using an ATDS. Accordingly, it is possible to ascertain and certify this Class but ultimately lose on liability if the Court finds that there was no usage of an ATDS, and thus it is not failsafe.

---

[3] This demonstrates the significant problem with the argument of a "fail-safe" Class—it makes it so a Class is either too specific or overbroad.

The Prerecord Class is defined as:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant or its agent to said person's telephone made through the use of any artificial or prerecorded voice within the four years prior to the filing of this Complaint.

SAC at ¶ 32. Such Class is not failsafe because the definition is not premised on liability under the TCPA, as liability also requires that the prerecorded calls have been made without prior express consent. Accordingly, it is possible to ascertain and certify this Class but ultimately lose on liability if the Court finds that Defendant had prior express consent for the calls placed by its agents, and thus it is not failsafe.

Plaintiffs specifically laid forth the modifications and explanation of how the modifications render the Classes non-fail safe in their Opposition to Motion to Dismiss. Defendant's arguments that Plaintiffs have not modified their Class definitions or conceded this point is not just wrong—it's not based on the clear record despite Defendant's attempts to misconstrue that record with its misleading parenthetical citations.

These definitions remove the "fail-safe" issue because they make it so membership is not premised on liability. Exactly these modifications have also been found in the context of TCPA cases to avoid the "fail-safe" problem presented by Defendant. *See Abella v. Student Aid Ctr., Inc.*, No. CV 15-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015); *Soular v. N. Tier Energy LP*, No. 15-cv-556, 2015 WL 5024786, at *9 (D. Minn. Aug. 25, 2015); *O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC*, No. CV 16-3563, 2017 WL 634069, at *4 (E.D. Pa. Feb. 16, 2017). The cases cited to by Defendant are inapposite to the definitions proposed here because the classes at issue in *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610

(E.D. Pa. 2015) and *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) involved classes that were defined as having all elements of the TCPA contained within them, specifically they were premised on the device being used being an ATDS as an element of the Class for the ATDS Class and the Defendant having prior express consent as an element of the Class for the Prerecord Class as compared to here where such elements are noticeably absent from the definitions.  Accordingly, Plaintiffs' Classes are not fail-safe.

## B.  Defendant's Argument Regarding Ascertainability And Individual Fact-Finding Is Inappropriate At This Stage

Highlighting exactly the Catch-22 that the issue of fail-safe classes creates, Defendant argues that because Plaintiffs' Classes are not explicitly defined as based on liability, they are overbroad.  Defendant additionally argues that Plaintiffs' Classes require individual fact finding which makes them inappropriate for Class Certification—and that all TCPA cases fall afoul of this same issue.  Both of Defendant's position are wrong.  Courts around the country, including courts in this district, have routinely recognized that class actions are the superior, and most efficient, method of adjudicating TCPA violations.  *See, e.g.*, *Lap Distributors, Inc. v. Glob. Contact - Int'l Publ'g Corp.*, No. CV 19-6317 (RMB/KMW), 2020 WL 1616505, at *5 (D.N.J. Apr. 1, 2020), *A & L Indus., Inc. v. P. Cipollini, Inc.*, 2013 WL 5503303, at *5 (D.N.J. Oct. 2, 2013) (noting that the plaintiff's "TCPA claim [is] better off resolved in a single class action than in numerous individual ones. Rule 23(b)(3) itself defines superiority in terms of efficiency. In the absence of class treatment, duplicate evidence of Defendant's alleged TCPA violation would have to be provided in hundreds if not thousands of individual lawsuits"); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. Cal. 2012).

Further, to the extent Defendant seeks to argue a blanket lack of commonality or

predominance, such arguments are best reserved for Class Certification, and Defendant has failed to demonstrate that no amount of discovery will prevent resolving the deficiencies in the amended class definitions. *Abella, supra* 2015 WL 6599747 at *4. As noted above, premature motions to strike are disfavored. *Landsman, supra* 640 F.3d at 93 (recognizing that a Court must conduct a "rigorous analysis" to determine whether class certification is appropriate and finding that a district court's decision was premature when it was made without discovery and on a motion to dismiss); *Korman, supra* 503 F. Supp. 2d at 762 (finding that "[i]t would be improper to allow [a defendant] to slip through the backdoor" and move to strike class allegations pursuant to Rule 23(d)(4) when, inter alia, "discovery on the issue is still ongoing."); *Donaca, supra* 2014 WL 12597152 (collecting cases). The best time to test the rigor of a class is at the class certification step after discovery and both sides have been fully able to brief the issue. This is because discovery provides time to determine whether Defendant and its agents' records may be used to identify and establish membership in the Classes through discovery. *See In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 397 (3d Cir. 2015) (recognizing that ascertainability can be determined through a defendant's records).

Every case Defendant cites in support of its striking with regards to ascertainability was decided at exactly such stage and not on a Motion to Strike.[4] While Defendant may ultimately be correct on its position regarding Plaintiffs ability to meet the evidentiary requirements of Class Certification, it is clear that the proper stage for such analysis is at the Motion for Class

---

[4] *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) (denial of plaintiffs motion for class certification); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012) (review of order granting plaintiffs motion for class certification); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013) (review of order granting plaintiffs motion for class certification); *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190 (D.N.J. 2013) (denial of plaintiffs motion for class certification). *Zarichny*, supra 80 F. Supp. 3d at 626, dealt with a fail-safe issue as discussed above, not a discovery issue.

Certification and not this early stage.  Accordingly, Defendant's Motion to Strike should be denied.

### C.  **Plaintiffs Have Adequately Alleged Agency**

Plaintiffs plead that the calls were placed by an agent of Defendant with either formal agency, apparent authority, or ratification.  Defendant asserts that Plaintiffs allegations are insufficient to support such relationship under an incredibly narrow argument regarding what "agency" is.  But, the Courts have uniformly held that vicarious liability under the TCPA is a very broad standard and Plaintiffs have adequately pled that standard.

A Defendant "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."  *In the Matter of The Joint Petition Filed by Dish Network, LLC, et al.*, CG Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574, 6582 ¶ 24 (2013) ("2013 FCC Order") at ¶ 24.  In *Campbell-Ewald Co.*, the Supreme Court, adopting a ruling issued by the FCC, found that the principles of vicarious liability and the traditional federal-common law theories of agency are applicable within the context of TCPA violations. *Campbell-Ewald Co. v. Gomez*, ⸺ U.S. ⸺⸺, 136 S.Ct. 663, 674, 193 L.Ed.2d 571 (2016) (finding "no cause to question" the FCC's ruling in *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)). The Supreme Court's guidance confirms that a party may be vicariously liable for prohibited conducted pursuant to the TCPA, such that a "seller or creditor cannot shield itself from liability simply by outsourcing telemarketing or collection calls to a third party."  *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016).

To the contrary, a party may be vicariously liable for conduct prohibited by the TCPA pursuant to federal common-law theories of agency, and the determination of such

requires a reviewing court to consider the nature of the defendant parties'

relationship. *Cunningham v. Capital Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL

6061405 at *6 (D.N.J. Nov. 20, 2018) (citing *City Select Auto Sales, Inc.*, 2014 U.S. Dist. LEXIS

134040, at *22 ("Other courts that have addressed vicarious liability under the TCPA have ...

applied federal common law agency principles to determine vicarious seller liability for

violations of the TCPA.") (citing cases); *Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563,

584 (W.D. Pa. 2017) ("Vicarious liability under the TCPA may be established under a broad

range of agency theories[.]")).

      With regards to actual express agency, Plaintiffs have alleged that Defendant had actual

knowledge of the conduct of its agent in placing calls to Plaintiff and that such conduct was

reasonably believed to be made with Defendant's express authority.  SAC at ¶¶ 17-18, 26-27.  In

*Cunningham v. Capital Advance Sols., LLC*, the Court found that the plaintiff had adequately

pled actual agency under the TCPA where plaintiff pled that the defendants were, at a minimum,

aware of the telemarketing entities actions and accepted its benefits.  2018 WL 6061405 at *7

(citing *Dobkin v. Enter. Fin. Group*, No. 14-1989, 2014 WL 4354070 (D.N.J. Sept. 3, 2014)

(holding that an "outsourcing arrangement in which [one defendant] had actual authority to sell

[another defendant's] products through telemarketing calls" is indicative of

an agency relationship); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-6131, 2014 WL

3014874, at *4 (E.D. Pa. July 3, 2014) (finding a plausible claim of vicarious liability where the

plaintiff alleged that the disputed "robocall was made pursuant to a contract"); *Cunningham v.*

*Rapid Response Monitoring Servs.*, 251 F.Supp.3d 1187, 1199 (M.D. Tenn. 2017) (finding a

cognizable agency relationship where Plaintiff "alleged an unlawful telemarketing scheme the

end result of which was the generation of business for [the defendant,]" despite the fact that

Plaintiff "has not alleged every detail of the relationship between the [d]efendants" at the pleadings stage).  Thus, by similarly pleading, Plaintiffs have pled actual express agency.[5]

In the alternative, with regards to apparent authority, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT 3D OF AGENCY, § 2.03.  "If a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may  reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority.  *Id.*

In delineating when apparent authority can be found so as to result in vicarious liability under the TCPA on the part of a seller for the conduct of a telemarketer, the 2013 FCC Ruling listed six different factors that can be an indication of apparent authority, of which two are immediately apparent here: "the authority to use the seller's trade name, trademark and service mark" and "if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."  2013 FCC Order at ¶ 46.  The FCC went on to observe that "at a minimum, evidence of these kinds of relationships – **which consumers may acquire through discovery, if they are not independently privy to such information** – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized

---

[5] Defendant's citation to *Jannarone v. Sunpower Corp.*, No. CV189612MASTJB, 2018 WL 5849468 (D.N.J. Nov. 7, 2018) is misguided and misplaced.  *Jannarone* concerned a breach of warranty / contract claim rather than a TCPA claim and one year later, in reviewing another Motion to Dismiss on the topic, the Court in *Jannarone* found that in fact the plaintiff had pled sufficient facts to demonstrate agency.  *Jannarone v. Sunpower Corp.*, No. CV189612MASTJB, 2019 WL 4058981, at *4 (D.N.J. Aug. 28, 2019), *reconsideration denied*, No. CV189612MASTJB, 2020 WL 2085635 (D.N.J. Apr. 30, 2020).

agent…. nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf." *Id.* at ¶ 46 and Ftn. 139.

Turning to one example case on apparent authority, the court in *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D. W. V.A 2013) in ruling on a motion for summary judgment, faced the issue of vicarious liability for calls allegedly placed on defendants' behalf by defendant Versatile Marketing Solutions, Inc. in violation of the TCPA.  Relying on the 2013 FCC Ruling, which references the definition of seller provided by 47 CFR 64.1200(f)(9), the *Mey* court explained that "the determination of whether an entity is a 'seller' turns on whether a telephone solicitation is made on its behalf." *Id.*  The *Mey* court emphasized the importance of this factor by stating that "[d]rawing all permissible inference in Mey's favor, that fact alone could lead a reasonable finder of fact to conclude that UTC and Monitronics cloaked VMS with the apparent authority to act on their behalf, thus exposing them to liability under § 227(c)." *Id.* at 932 (emphasis added).  Plaintiff Smith has pled that for the initial call to Plaintiff Smith, the subsequent call made by Defendant immediately after the initial call was indicative that the calls were made for the benefit of Defendant.  SAC at ¶¶ 9-10.  For the January calls to both Plaintiffs, "Exchange Energy" explicitly identified that they were calling on behalf of "Vision Solar," who then directly called Plaintiffs.  *Id.* at ¶¶ 14, 17-18, 22, 26.  Thus, again, there is clearly apparent authority sufficient to create agency.

With regards to ratification, a principal may ratify the conduct of an agent.  "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Id.* at § 4.01  A person ratifies an act by  (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.  RESTATEMENT 3D OF AGENCY, § 4.01.  "[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. This is so even though the person also manifests dissent to becoming bound by the act's legal consequences." *Id.*, Comment d., ¶ 2.

Plaintiffs have pled explicitly that Defendant ratified its agent's actions and had actual

knowledge of the conduct of its agent.  SAC at ¶¶ 1017-18, 26-27.  Further, Defendant clearly accepted the benefit of its agents' actions in the form of telemarketing leads to which it attempted to solicit its services.  *Id.*  The acceptance of benefits and continuing acceptance of benefits despite knowing what its telemarketing agents "were doing or, at the very least, knowing of facts that would have lead a reasonable person to investigate", creates agency. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072–73 (9th Cir. 2019) (citing Restatement of Agency § 4.01 cmt. g).     Thus, Defendant also ratified the calls at issue and may be held vicariously liable for the actions of its agent.

## D.  Smith Has Adequately Pled A Section (b) Violation Of The TCPA

Defendant again attacks Plaintiff Smith's well-pled allegations regarding his receipt of a call in violation of the TCPA.[6]  To state a cause of action under the TCPA, a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [ATDS or prerecorded or artificial voice]; (3) without the recipient's prior express consent."  *Martinez v. TD Bank USA*, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. 2017) (citations omitted).  This Circuit has held that an ATDS must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers.[7] *Dominguez*, *supra* 894 F.3d at 121.

---

[6] Defendant does not move to dismiss Plaintiff Heidarpour's prerecorded voice claims on the merits, thereby conceding that Plaintiff Heidarpour has adequately stated a claim except as to Defendant's arguments regarding agency.  This is unsurprising, as Plaintiff Heidarpour has explicitly alleged that a multiple minute long prerecorded or artificial voice was used in calling him.

[7] As noted above, Supreme Court is currently reviewing the definition of an ATDS under the TCPA in *Facebook, Inc. v. Duguid*, No. 19-0511, 2020 WL 3865252 (U.S. July 9, 2020), which is scheduled for oral argument in December 2020.  The Supreme Court is specifically reviewing the split between *Dominguez v. Yahoo, Inc*., 894 F.3d 116 (3d Cir. 2018) and other Circuits and thus the Court's ruling will implicate the arguments made by Defendant such that a stay is likely appropriate.

Courts are split on this topic and the amount of allegations required, with some noting that a TCPA plaintiff sufficiently alleges that calls were made using an autodialer by identifying "circumstances surrounding" the calls that "create a plausible inference of autodialing," including: their "commercial" content; that multiple calls were made to the same recipient; and that they were made without the recipient's consent." *See Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, at *4 (S.D. Fla. Nov. 9, 2015); *Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 WL 3732097 (S.D. Fla. Dec. 14, 2017); *Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 WL 232425, at *3-4 (N.D. Ill. Jan. 20, 2016).  To satisfy this element, courts permit the allegation of an automatic system to be pled on information or belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device."  *Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *3 (D.N.J. Nov. 29, 2018) (citing *Norman v. Sito Mobile Sols.*, No. 17-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F.Supp.2d 1253, 1260 (S.D. Cal. 2012)).  This Court, in its ruling on Defendant's Motion to Dismiss, cited to *Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484 (D.N.J. Nov. 29, 2018) and noted that Plaintiff Smith "must provide 'at least some detail regarding the content of the messages or calls, thereby rending the claims that an ATDS was used more plausible."  Dkt. 11 at p. 6.

In addition to the previous assertions regarding the impersonal and mass market nature of the calls placed to Plaintiff Smith, Plaintiff Smith has additionally alleged that there was a noticeable pause before an agent came on the line in both the September 2019 and January 2020 calls.  SAC at ¶¶ 9, 11, 15-16.  Even after the *Dominguez* decision, "courts in this district continue to find that an allegation of a brief pause at the beginning of a call is sufficient to plead

the ATDS element."[8]  *Hazan v. Wells Fargo Home Mortg.*, No. CV1810228MASTJB, 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020) (citing  *Wilson v. Quest Diagnostics, Inc.*, No. 18-11960. 2018 WL 6600096. at *2 (D.N.J. Dec. 17, 2018) (finding a plausible inference of ATDS use where the plaintiff alleged that, upon answering the calls, "she heard a momentary pause before someone started speaking to her") and *Sieleman v. Freedom Mortg. Corp.*, No. 17-13110, 2018 WL 3656159, at *6 (D.N.J. Aug. 2. 2018)).[9]  Plaintiffs have further pled that the device used by Defendant and its agent to call Plaintiff Smith was an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1), and thus is "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers."  In combination with Plaintiff Smith's allegations regarding the impersonal and mass marketing nature of the content of the calls and presence of a delay or pause at the start of the call, Plaintiff Smith has adequately alleged usage of an ATDS sufficient to state a claim.

---

[8] Defendant cites to no cases within this Circuit that stand for its proposition on a Motion to Dismiss, before preemptively arguing that the cases likely to be cited by Plaintiffs while within this Circuit are non-binding.  Defendant's argument is thus non-persuasive for obvious reasons.

[9] *See also Todd v. Citibank*, No. 16-5204-BRM-DEA, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017) (denying motion to dismiss, in part, where plaintiff alleged "she heard a silence before a recording began, convincing [her] ... [d]efendant's calls were 'robocalls' "); *Carrera v. Major Energy Servs., LLC*, No. 15-3208 (MAS) (LHG), 2016 WL 7183045, at *2 (D.N.J. Mar. 29, 2016) (denying motion to dismiss where plaintiff alleged "there was a brief pause before a live operator got on the line"); *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 WL 7380708, at *2 (E.D. Pa. Dec. 19, 2016) (denying motion to dismiss, in part, where plaintiffs alleged "there was silence and 'dead air' before a live person began to speak" and a "high volume of calls," which continued after plaintiffs requested that defendant stop calling); *Connelly v. Hilton Grand Vacations Co.*, No. 12-cv-599 (KSC), 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) (denying motion to dismiss where plaintiffs alleged "[t]he calls had a delay prior to a live person speaking," and the court could "infer the calls were randomly generated").

IV.     __CONCLUSION__

For the reasons laid forth above, the Court should deny Defendant's Motion in full.  To the extent the Court grants Defendant's Motion with respect to a lack of sufficient allegations regarding the principal-agency relationship between Defendant and its telemarketing company or the nature of the device used to place the call,  Plaintiffs respectfully requests that the Court grant them leave to add further detail, or otherwise take the necessary steps to cure any defects found by the Court in his pleadings. *See, e.g., Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.") (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).

Dated: November 2, 2020              **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
                                     By: *s/ Cynthia Z. Levin*
                                     Cynthia Z. Levin, Esq.
                                     Attorney for Plaintiffs

Filed electronically on this 2nd Day of November, 2020, with:

United States District Court CM/ECF system.

Notification sent electronically on this 2nd Day of November, 2020, to:

Honorable Michael M. Baylson
United States District Court
Eastern District of Pennsylvania
And All Counsel of Record as Recorded On The Electronic Service List

/s/ Cynthia Z. Levin, Esq.
CYNTHIA Z. LEVIN