IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEWART SMITH; FRED HEIDARPOUR,** individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**VISION SOLAR, LLC, and DOES 1 through 10, inclusive, and each of them,**<br><br>Defendants. | Case No. **2:20-cv-02185-MMB** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE THE EXPERT REPORT OF JEFFREY HANSEN**

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (*pro hac vice*)
21031 Venture Blvd, Ste. 340
Woodland Hills, CA 91364
Phone: 866-598-5042
Fax: 866-633-0228
tfriedman@toddflaw.com
*Attorneys for Plaintiffs Stewart Smith, Fred Heidarpour, and the putative Classes*

i

## **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................................. 1
II. THE TWO-WEEK DELAY IN DISCLOSING HANSEN'S REPORT WAS HARMLESS ............................................................................................................................ 2
III. STANDARD OF REVIEW TO BE APPLIED TO DEFENDANT'S MOTION. ............. 5
IV. ARGUMENT ......................................................................................................................... 6
   A. Mr. Hansen Proposed A Testable Hypothesis ...................................................... 6
   B. Mr. Hansen's Opinions Are Not Speculative—They Are Based On Evidence Regarding How The System Functioned ..................................................................... 8
   C. Mr. Hansen's Opinions "Fit" The Issues In This Case .................................................... 9
V. CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Barber v. Corizon Health, Inc.*, No. CV 15-1427, 2019 WL 8112500 (W.D. Pa. May 6, 2019) ... 9
*BASF Corp. v. Aristo, Inc.,* No. 2:07 CV 222 PPS, 2012 WL 2529213 (N.D. Ind. June 29, 2012) 9
*Clutter v. Washington Cty.*, Civ. A. No. 13-185, 2014 WL 5343199 (W.D. Pa. Oct. 20, 2014) .... 9
*Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) .................................................. 5, 6
*Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000) ..................................................................... 7
*EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81 (D. Del. 2016) .......................................... 6
*Geis v. Tricam Indus., Inc.*, No. CIV.A. 09–1396 MLC, 2010 WL 8591142 (D.N.J. Oct. 6, 2010)
   .................................................................................................................................................. 2
*Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1624989 (N.D. Ill. Apr. 15,
   2013), aff'd, 755 F.3d 456 (7th Cir. 2014) .............................................................................. 8
*Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777 (3d Cir.1996) ....................................................... 5
*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ....................................................... 5
*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000) ................. 9
*In re TMI Litig.,* 193 F.3d 613 (3d Cir.1999) ................................................................................. 2
*Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) ............................................................ 7
*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802 (3d Cir. 1997) .................................................. 6
*Keys v. Ocwen Loan Servicing, LLC*, No. 17-cv-11492, 2018 WL 3914707 (E.D. Mich. Aug. 16,
   2018) ........................................................................................................................................ 7
*Klatch—Maynard v. Sugarloaf Tp.,* No. 06–CV–0845, 2011 WL 2006424 (M.D.Pa. May 23,
   2011) ........................................................................................................................................ 2
*Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997) ................................................ 3
*Masimo Corp. v. Philips Elec. N. Am. Corp.,* 62 F.Supp.3d 368 (D.Del.2014) ............................ 6
*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977) .................... 3
*Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153 (3d Cir. 1995) .................................................... 2
*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133 (3d Cir. 2000) ............................................. 3
*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir.2008) ................................................................ 6
*Tolerico v. Home Depot*, 205 F.R.D. 169 (M.D. Pa. 2002) .......................................................... 2
*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) ...................................................... 10
*United States v. Schiff*, 602 F.3d 152 (3d Cir.2010) ..................................................................... 6
*Vaskas v. Kenworth Truck Co.*, No. 3:10–CV–1024, 2013 WL 1207963 (M.D. Pa. Mar. 25,
   2013) ........................................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 37 ............................................................................................................................ 2
Fed. R. Evid. 702 ........................................................................................................................ 5, 8

I. **PRELIMINARY STATEMENT**

In support of their motion for class certification (ECF No. 32)[1], the Plaintiffs Fred Heidarpour and Stewart Smith ("Plaintiffs") submitted the expert report of Jeffrey Hansen ("Mr. Hansen"), who provided his expert opinion regarding the ability to identify the names and addresses of proposed class members in a practical and efficient manner and how the information contained within the outbound dial list produced by Defendant Vision Solar LLC ("Defendant") for Solar Exchange LLC ("Solar Exchange") is indicative of the use of a predictive dialer.[2] ECF No. 34. Defendant now moves to strike Mr. Hansen's report on the basis that it was untimely, though it does not argue that such delay was anything but harmless and under *Daubert* based largely on a misconstruction of the facts at hand. Namely, Defendant misapprehends the fundamental substance of Mr. Hansen's report—that the information contained within the outbound dial list shows the system was making "agentless" calls which is indicative of the type of system used.

Further, Defendant's position only serves to highlight the underlying issue in this case, which is that Defendant's policy and practice was to destroy all records of calls. Despite this practice, Plaintiffs have uncovered sufficient evidence to try and hold Defendant liable. The Court should deny Defendant's Motion.

---

[1] Though, arguably, the primary argument Mr. Hansen makes is an argument on the merits—that is, what type of dialer was used by Solar Exchange—which is unnecessary for Class Certification.

[2] Defendant does not challenge Mr. Hansen's testimony regarding the identification of Class Members using reverse lookup and thus waives such arguments as to this Motion.

1

## II. THE TWO-WEEK DELAY IN DISCLOSING HANSEN'S REPORT WAS HARMLESS

While Defendant has filed its Motion to Strike primarily as a *Daubert* motion, its first argument is under Fed. R. Civ. P. 37. But, while Plaintiffs disclosed Mr. Hansen on the deadline, the two week delay in disclosing his report was a harmless error—and Defendant's do not argue otherwise.

Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It follows that a court has the discretion to bar expert testimony that is not proffered in accordance with Rule 26, unless the noncompliance is excused. *See Geis v. Tricam Indus., Inc.*, No. CIV.A. 09–1396 MLC, 2010 WL 8591142, at *2 (D.N.J. Oct. 6, 2010). A sister court within this Circuit has usefully summarized the standards under Rule 37(c)(1) for excusing noncompliance as "substantially justified" or "harmless." *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002). Failure to comply with Rule 26(a) is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." *Klatch—Maynard v. Sugarloaf Tp.,* No. 06–CV–0845, 2011 WL 2006424, at *2 (M.D.Pa. May 23, 2011).

The Third Circuit has held that "even under Rule 37, the imposition of sanctions for abuse of discovery ... is a matter within the discretion of the trial court." *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir. 1995) (citations and quotations omitted). It has cautioned that excluding evidence is an "extreme sanction" for a violation of a discovery order. *In re TMI Litig.,* 193 F.3d 613, 721 (3d Cir.1999) (citation and quotations omitted). The Third Circuit has

2

set forth factors (the "*Pennypack* factors"), to be considered when determining whether "exclusion of evidence is an appropriate sanction for failure to comply with discovery duties": (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000); *see also Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904–905 (3d Cir. 1977). The Third Circuit has supplemented that *Pennypack* list, also considering (5) "the importance of the excluded testimony" and (6) the party's explanation for failing to disclose. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Pennypack*, 559 F.2d at 905); *Vaskas v. Kenworth Truck Co.*, No. 3:10–CV–1024, 2013 WL 1207963, at *3 (M.D. Pa. Mar. 25, 2013).

Plaintiffs' delayed disclosure was harmless and the *Pennypack* factors weigh against excluding the evidence. Plaintiffs' failure to provide the report by September 17, 2021 was the result of Plaintiffs' efforts to try and resolve this matter with Defendant prior to having to incur the costs associated with an expert report, at which point the Parties would be incentivized to let the cards fall where they may. Plaintiffs tried repeatedly in August and September 2021 to get a response to their demands in light of the upcoming Motion for Class Certification and Expert costs, but such efforts were ultimately rebuffed by Defendant.[3] Plaintiffs made a honest mistake in forgetting the September 17, 2021 deadline while trying to resolve their claims, ultimately supplementing with the report of Mr. Hansen as soon as it was ready. As Defendant argues

---

[3] Who, unfortunately, did what it has done largely throughout this case—ignore emails and phone calls.

3

throughout its Motion, Defendant had sufficient knowledge of the information Mr. Hansen was opining on since April 2021 when the outbound dial list was produced. Accordingly, Plaintiffs respectfully request the Court find that the delay was harmless.

In the alternative, Plaintiffs respectfully request the Court decline to strike the material because the equities weigh in favor of it being considered. Turning to the *Pennypack* factors, Defendant has suffered no prejudice or surprise from the expert report being admitted. Defendant does not argue that it was denied the chance to cross-examine Mr. Hansen regarding his report.[4] Defendant does not argue that the delay has caused it to be unable to comply with its own rebuttal disclosure deadline of October 18, 2021.[5] Defendant additionally requested and obtained an additional week to file its Opposition to Class Certification such that, at best, it lost one week in reviewing the report in formulating its opposition.[6] Further, while there was no prejudice, Defendant could have and still could cure any "prejudice" by deposing Mr. Hansen—but again, it has chosen not to. Allowing the evidence in will not disrupt the orderly and efficient trial of the case, as no trial date has been set while the Motion for Class Certification is decided. Plaintiffs did not act in bad faith in failing to comply with the discovery obligation—Plaintiffs made a mistake with respect to the deadline caused by their futile efforts to try and get this matter settled as noted above. The excluded testimony would be important because it goes to the merits of the case—in particular what the characteristics of the system used by Solar Exchange to dial on behalf of Defendant were. Finally, Plaintiffs have provided an explanation for the delay.

---

[4] Though it has chosen not to but have until November 12, 2021 to change its mind.
[5] Though Defendant has provided on expert report of its own.
[6] Though the arguments about the actual use of the report were only known when Plaintiffs filed their timely Motion for Class Certification on October 1, 2021 anyway.

4

While Plaintiffs apologize to the Court and Defendant for the two week delay, Plaintiffs respectfully request the Court not strike Mr. Hansen's report for being untimely.

### III.  STANDARD OF REVIEW TO BE APPLIED TO DEFENDANT'S MOTION.

Under Federal Rule of Evidence 702:

> "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

FED. R. EVID. 702.

Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms*., Inc., 509 U.S. 579, 592-93 (1993).  Under the Federal Rules of Evidence, it is the role of the trial judge to act as a "gatekeeper" to ensure that any and all expert testimony or evidence is not only relevant, but also reliable. *Id.,* at, 589, 113 S.Ct. at 2794–95. The Rules of Evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact. *See Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 780 (3d Cir.1996).  Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility. *See Holbrook,* 80 F.3d at 780; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

The Third Circuit has explained that "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [i.e., reliability]; and (3) the expert's

5

testimony must assist the trier of fact [i.e., fit]."[7]  *United States v. Schiff*, 602 F.3d 152, 172–73 (3d Cir.2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243–44 (3d Cir.2008)). *Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology.  *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).  If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility.  *Id.* at 809.

A *Daubert* motion should be denied where there is a logical basis for the expert's opinion testimony.  *Masimo Corp. v. Philips Elec. N. Am. Corp.,* 62 F.Supp.3d 368, 388 (D.Del.2014).  In that case, "the weight and credibility of an expert's testimony may be challenged through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 92 (D. Del. 2016) (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786).

IV.   ARGUMENT

A. Mr. Hansen Proposed A Testable Hypothesis

Defendant misreads Mr. Hansen's testimony and as a result misapplies the *Daubert* factor as to this issue, which is one of reliability.  Mr. Hansen hypothesizes that Solar Exchange's system used to place the calls at issue in the Solar Exchange Class definition was a predictive dialer based on the disposition codes which indicate agentless calls were being made. Dkt. 34 at ¶¶ 14-15.  This is based on the data contained within the outbound dial list DEF_0000001-194 which contains fields indicating that calls with the "outbound" designation did not have an agent assigned to them, indicating that the calls were agentless.  *Id.* at ¶ 14.  This is further supported by the data containing

---

[7] Defendant only challenges the reliability and fit aspects of the test, and thus concedes Mr. Hansen is qualified for the opinions he gives.

6

"Answering Machine" and "No Answer" disposition codes which are similarly not associated with an agent, indicating that the system would only connect to an agent if a live person picked up the call. *Id.* Mr. Hansen then opines further to explain the features of these predictive dialers and how they work. *Id.* at ¶ 15. Mr. Hansen's opinion is also based on his extensive experience working with data warehousing for autodialers, the manner in which outbound dial lists are used and maintain, and working with calling lists.[8] *Id.* at ¶¶ 6, 9-10.

Mr. Hansen's hypothesis is thus that these fields are indicative of the types of calls being placed. It is testable based on looking at the millions of call records within the data and confirming whether they meet this hypothesis. They do, as indicated in his report. Because Mr. Hansen has explained his methodology for a testable hypothesis, his testimony should be upheld. *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000). To the extent Defendant disagrees with this testable hypothesis, it may either present a rebuttal expert[9] or contrary evidence which will allow a trier of facts to weigh the evidence. To the extent Defendant disagrees with the methodology, it may attack the methodology but such attack goes to the <u>weight</u> of the evidence not the admissibility.

Defendant's second argument is that Mr. Hansen has not proven that Solar Exchanged used an ATDS, but Mr. Hansen is not required to do so at this stage—and in reality, it would be improper to do so at any stage. "As a general rule, ... an expert may not offer legal opinions." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). Determining whether a dialer is an ATDS under the TCPA's definition is a legal opinion. *See Keys v. Ocwen Loan Servicing, LLC*, No. 17-cv-11492, 2018 WL 3914707, at *5 (E.D. Mich. Aug. 16, 2018), appeal filed, No. 18-1989 (6th Cir. Aug. 29, 2018). Mr. Hansen may only opine on the features of the dialer used as he is able to

---

[8] As noted above, and again, Defendant does not actually contest that Mr. Hansen was qualified to give his opinion—they only attacked whether his opinion was reliable or fit for this matter.
[9] Which it did not disclose by the deadline, and thus has seemingly waived.

deduce through his hypothesis above—which is unequivocally helpful to the trier of fact in drawing conclusions at a later stage in this matter. Accordingly, Mr. Hansen adequately puts forth a testable hypothesis.

### B. Mr. Hansen's Opinions Are Not Speculative—They Are Based On Evidence Regarding How The System Functioned

Defendant's second argument is that Mr. Hansen's opinions are too speculative—but its citation to cases in which only the manuals were looked at is misplaced here, as the evidence analyzed by Mr. Hansen was specifically produced by the dialer in use. The outbound dial list is generated by the dialer used by Solar Exchange and reflects a record of those calls placed, including the number dialed, mode used to place the call, and disposition of the call. Thus, the evidence looked at by Mr. Hansen in testing his hypothesis as set forth above is the practical data generated by the system and not hypothetical data based off a dialer manual.[10] This distinguishes it from the cases cited by Defendant.

Further, Defendant's criticisms—at best—go to the weight of Mr. Hansen's report and not its admissibility. *See* Fed. R. Evid. 702; *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1624989, at *5 (N.D. Ill. Apr. 15, 2013), aff'd, 755 F.3d 456 (7th Cir. 2014) (finding that when expert utilized experience and assumed facts, which were flawed, in rendering his opinion, the flaws "go to the weight the jury affords the testimony, not to its admissibility."). Indeed, "admissibility" under *Daubert* is different from the weight that a jury could afford to expert testimony, and perceived witnesses in expert testimony should be explored "through cross-examination at trial." *Barber v. Corizon Health, Inc.*, No. CV 15-1427, 2019 WL 8112500, at *1

---

[10] Plaintiffs discuss the nature of the outbound dial list and its production by Defendant in their pending Motion for Class Certification for further background.

(W.D. Pa. May 6, 2019). This is true for a challenge on the basis of speculation. *Clutter v. Washington Cty.*, Civ. A. No. 13-185, 2014 WL 5343199, at *2 (W.D. Pa. Oct. 20, 2014). Whether a jury will agree with the correctness of the facts that underly Mr. Hansen's conclusions is reserved for a jury. *BASF Corp. v. Aristo, Inc.,* No. 2:07 CV 222 PPS, 2012 WL 2529213, at *5 (N.D. Ind. June 29, 2012) ("It is for the jury to decide the correctness of the facts that underlie each of these experts' opinions.").

### C. Mr. Hansen's Opinions "Fit" The Issues In This Case

Defendant's last two arguments are retreads of its first two but under the countenance of "fit" and "general acceptance." An expert's testimony must "fit" the facts of the case in which it is offered—that is, there must be a connection between the methodology or test result to be presented and the particular factual issues in the case. *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000). The Third Circuit has framed this requirement as one of relevance—that is, to be admissible, the expert testimony must help the trier of fact understand the evidence or determine a fact issue. *Id.* at 665. Defendant's argument regarding "fit" is nonsense. Mr. Hansen's opinions regarding the features of the system used by Solar Exchange to place the calls at issue are directly relevant to a jury in deciding what the features of that system as, so as to enable a Judge to draw a legal conclusion with regards to whether it qualifies as an ATDS under the TCPA. Thus, it clearly "fits" the purpose it is sought to be used for.

Regarding methodology, this is the same argument as regarding the existence of a testable hypothesis. Defendant does not actually attack why or how the proposed hypothesis by Mr. Hansen may not be tested and thus support the opinion he presents. Defendant does not even state how the proposed methodology is not generally accepted—instead just generally citing case law.

9

Mr. Hansen is a qualified expert with regards to the use and maintenance of automated dialers. *See, e.g., Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 578 (N.D. Ill. 2018) (finding Mr. Hansen qualified and noting that he has "served as an expert witness or consultant in more than 100 TCPA class action lawsuits"). He has proposed a hypothesis, tested it, and formed an opinion based on those results with respect to the features of Solar Exchange's calling system based on the output of that system. Mr. Hansen's report should not be stricken.

## V.   CONCLUSION

The testimony and report of the Mr. Hansen will materially aid this Court and a jury in determining the features of Solar Exchange's dialer—particularly in light of Defendant's best efforts to ensure no other evidence exists. Plaintiff's expert has testified that he is qualified and capable of performing the test proposed. As such, the methodologies used by Plaintiff's expert are clearly reliable and thoroughly proven.

It is therefore respectfully requested that the Defendant's Motion to Strike be denied in its entirety.

Dated: November 5, 2021            Respectfully submitted,

By: /s/ Todd M. Friedman
Todd M. Friedman, Esq. (*pro hac vice*)
*Attorney for the Plaintiffs*

Filed electronically on this 5th Day of November, 2021, with:
United States District Court CM/ECF system.
Notification sent electronically on this 5th Day of November, 2021, to:

Honorable Michael M. Baylson
United States District Court
Eastern District of Pennsylvania
And All Counsel of Record as Recorded On The Electronic Service List


<u>/s/ Todd M. Friedman, Esq.</u>
TODD M. FRIEDMAN