IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **STEWART SMITH & FRED HEIDARPOUR,** *INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED*<br><br>v.<br><br>**VISION SOLAR LLC, and DOES 1 – 10,** *INCLUSIVE AND EACH ONE OF THEM* | **CIVIL ACTION**<br><br>**NO. 20-2185** |
|---|---|

Baylson, J.                                                                                                          April 20, 2022

**MEMORANDUM RE: DEFENDANT'S MOTION TO STRIKE PLANTIFFS' EXPERT REPORT AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs Stewart Smith and Fred Heidarpour, individually and on behalf of all others similarly situated, allege violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. Before the Court is Defendant Vision Solar LLC's Motion to Strike Plaintiffs' Expert Report of Jeffrey A. Hansen (ECF 42) and Plaintiffs' Motion for Class Certification (ECF 32). For the following reasons, Defendant's Motion to Strike is denied; the Court will reserve decision on Plaintiffs' Motion for Class Certification pending additional discovery on the issue of agency.

**I.   Defendant's Motion to Strike the Expert Report of Jeffrey A. Hansen**

Defendant seeks to strike the expert report of Jeffrey A. Hansen on the grounds that his opinions fail to satisfy the requirements of Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702.[1] According to Defendant, Hansen's opinions are not based on a

---

[1] Defendant also argues that Hansen's expert report must be stricken because it was submitted two weeks after the Court's deadline for exchange of expert reports. See Mot. to Strike 5-6. Exclusion of Hansen's expert report for missing the relevant discovery deadline by two weeks is an inappropriate sanction here. See Nicholas v. Pa. State Univ., 227 F.3d 133, 148 (3d Cir.

testable hypothesis because he "makes the inferential leap, without any explanation or analysis, that the predictive dialer Solar Exchange purportedly employed has sequential and random functionality because, according to Hansen, all predictive dialers do." Mot. to Strike 9.  Defendant suggests that his opinions are based merely on his review of a call list, and his lack of interaction with the alleged predictive dialer that Solar Exchange used, his failure to identify the make or model of that dialer, and his failure to review that dialer's manuals renders his hypothesis untestable.  Id. at 9-10.  Defendant further argues that Hansen's opinions are speculative, and his report is not based on reliable or scientific methodologies or principles.  Id. at 11-13.

In response, Plaintiffs argue that: (1) Hansen has provided a testable hypothesis; (2) his opinions are not speculative, rather they are based on evidence regarding how the call system at issue functioned, to include evidence produced by the dialer used by Solar Exchange; and (3) his opinions "fit" the issues in this case because his "opinions regarding the features of the system used by Solar Exchange to place the calls at issue are directly relevant to a jury in deciding . . . the features of that system . . . so as to enable a Judge to draw a legal conclusion with regards to whether it qualifies as an ATDS under the TCPA." See Resp. to Mot. to Strike 6-9.

At the evidentiary hearing on March 1, 2022, Hansen did not give an ultimate opinion as to whether the alleged dialer used by Solar Exchange was an "automatic telephone dialing system" ("ATDS" or "autodialer") pursuant to the Supreme Court's interpretation of the term in Facebook, Inc. v. Duguid, 141 S. Ct. 1163 (2021), which held that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."  See, e.g., Tr. 90:1-6; 94:3-95:5; 100:10-24.  According to Plaintiffs, Hansen, although declining to offer a "legal opinion on

---

2000); Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997).

whether the dialer used was an ATDS under Facebook[,] . . . did testify that the type of random or sequential number generation used by the dialer in this matter falls within the confines of an ATDS under [Facebook][.]" Pls.' Suppl. Br. 5. Defendant counters that Hansen's failure to give an opinion as to whether the alleged dialer satisfied the definition of an ATDS under Facebook can only be explained by the conclusion that "Hansen does not believe, under [Facebook], the system used by Solar Exchange used a number generator to store or produce phone numbers randomly or sequentially." Def.'s Suppl. Br. 4. Defendant also contends that Hansen's description of Solar Exchange's dialer as a "predictive dialer" "is not evidence" that the dialer falls within the Facebook Court's definition of an ATDS, and his description as to the "functionality" of Solar Exchange's dialer likewise does not place it within the definition of ATDS pursuant to Facebook. Id. at 5-6.

Although Hansen could have given an ultimate opinion as to whether the alleged dialer used by Solar Exchange was an ATDS pursuant to Facebook, see Fed. R. Evid. 704, this omission does not in itself warrant a conclusion that Hansen's expert opinion should be stricken, or that the alleged dialer was not an ATDS under the TCPA. Hansen testified that:

> [CROSS EXAMINATION]
>
> THE COURT: . . . Now, is there any opinion in your report here between pages 13 and 18 that the system that was used by Vision Solar or its agent violated the ATDS, that is the statute?
>
> A. . . . Phone numbers are initially statically stored on a hard drive, so that's where I was saying that that robo list of all the phone numbers I've collected over the years, that's the global list. And then from there, ultimately the predictive dialer will create a list to call by producing numbers from the stored list, and it does that by reading that list sequentially and then writing the list sequentially. It also calls sequentially. Some dialers do the opposite and randomize the list on the calling portion of that. And those are the only two options that you would have. The default is sequential. But aside from that, I was not wanting to make an opinion as far as the Facebook matter. But I would point out that the Facebook system does not even resemble a predictive dialer whatsoever.

>       . . . .
>
>       [REDIRECT]
>
>       . . . .
>
>       Q: . . . [Y]our opinion is that the system that was used was a predictive dialer that used a random or sequential number generating?
>
>       A: Correct.

Tr. 94:7-95:5; 100:17-20.  Hansen's testimony as to his examination of the call list—albeit not as thorough or definitive as it could have been—was sufficient to allow him to proceed as an expert in support of Plaintiffs' Motion for Class Certification, at least on the issue of whether the alleged dialer at issue was an ATDS under the TCPA.  See Pls.' Suppl. Br. 2-5, Ex. 1.  Therefore, the Court will deny Defendant's Motion to Strike.

**II.     Plaintiffs' Motion for Class Certification**

As to Plaintiffs' Motion for Class Certification, the parties have extensively briefed and argued the issue of agency, specifically whether Solar Exchange was acting as an agent of Defendant for marketing purposes.  In support of its Motion, Plaintiff attached the contract executed between Vision Solar and Solar Exchange, whereby Solar Exchange agreed "to use commercially reasonable efforts to provide the Appointments specified in the Purchase Order and as defined in Section 1 of (Exhibit A) to [Vision Solar] on an exclusive basis."  See Decl. of Todd M. Friedman in Support of Motion for Class Certification, Ex. 1 ("Agreement"), ¶ 1.  Solar Exchange was not obligated to provide Vision Solar a minimum quantity of appointments.  Id. Pursuant to paragraph 5 of the Agreement, Vision Solar and Solar Exchange were "independent contractors," and they agreed that the Agreement did "not establish any relationship of partnership,

joint venture, employment, franchise, or agency between the parties."[2] Id. at ¶ 5.

"[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016) (citing In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013)). "Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority[,] and ratification," and the "relationship between the parties is paramount in determining whether there can be vicarious liability." Klein v. Com. Energy, Inc., 256 F.Supp.3d 563, 585 (W.D. Pa. 2017); see also Frey v. Frontier Utils. Ne. LLC, No. 19-2372, 2020 WL 12697468, at *3 (E.D. Pa. Apr. 13, 2020) (Marston, J.). The party seeking to assert an agency relationship and establish vicarious liability bears the ultimate burden of proof, see Klein, 256 F.Supp.3d at 584 (citing I.H. ex rel. Litz v. Cnty. of Lehigh, 610 F.3d 797, 802 (3d Cir. 2010)), and it is the burden of the party seeking class certification to establish that all relevant requirements have been met, see In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 316 n.14 (3d Cir. 2008).

The label of "independent contractor" to define the relationship between Vision Solar and Solar Exchange does not necessarily establish or refute the existence of an agency relationship. See Klein, 256 F.Supp.3d at 585 (noting that the label of "independent contractor" "is not alone determinative and the court must consider the actual practice between the parties" in determining whether an agency relationship exists). There is otherwise insufficient evidence in the record to make a determination as to whether Solar Exchange was acting as an agent of Vision Solar, and therefore could be held vicariously liable for Solar Exchange's alleged violations of the TCPA.

---

[2]  The Agreement also contains an indemnity provision that released Vision Solar from "any claims, damages, and liabilities asserted by third parties arising from, related to, or connected with Solar Exchange LLC['s] use of data, intellectual property and/or other results provided to Vision Solar LLC." Agreement ¶ 4.

5

Therefore, the parties shall confer as to whether additional discovery on this issue is warranted and, if so, what type of discovery and how much time should be allowed.

### III.     Conclusion

For the foregoing reasons, Defendant's Motion to Strike the Expert Testimony of Jeffrey A. Hansen is denied. The Court will reserve decision on Plaintiffs' Motion for Class Certification pending additional discovery on the issue of agency. An appropriate order follows.

O:\CIVIL 20\20-2185 Smith v Vision Solar\20cv2185 memorandum re class certification and motion to strike.docx